**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**BARRY BOYD,** *derivatively on behalf of*
**CYPRESS WOOD & LUMBER, LLC**

**CIVIL ACTION**

**VERSUS**

**NO. 25-778-JWD-RLB**

**BRETT PRICE, BRANDI PRICE,**
**& PRICE'S WOOD PRODUCTS, LLC**

**–AND–**

**CYPRESS WOOD & LUMBER, LLC,**
*Nominal Defendant*

## RULING AND ORDER

This matter comes before the Court on the *Rule 12(b)(1) Motion to Dismiss* ("*MTD*") (Doc. 26) filed by Defendants Brett Price, Brandi Price, and Price's Wood Products ("PWP") (collectively, "Defendants"). Plaintiff Barry Boyd ("Plaintiff" or "Boyd"), derivatively on behalf of Cypress Wood & Lumber, LLC ("CWL"), opposes the motion. (Doc. 38.) Defendants have filed a reply. (Doc. 40.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' *MTD* is denied.

## I.   RELEVANT FACTUAL & PROCEDURAL BACKGROUND

Plaintiff and Defendant Brett Price acquired CWL in early-2020. (Doc. 7 at 7, ¶ 21.)[1] At all relevant times, Plaintiff was a member of CWL, holding a 50-percent stake therein. (*Id.* at 2, ¶ 2.) Defendant Brett Price held the remaining 50-percent stake. (*Id.*) In addition to being a member

---

[1] The above facts come mostly—but not exclusively—from Plaintiff's *First Amended Verified Derivative Complaint* (Doc. 7). For purposes of the *MTD*, the Court accepts as true any undisputed, well-pleaded factual allegations. *See, e.g.*, *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (reciting the Rule 12(b)(1) standard); *Russell v. Choicepoint Servs., Inc.*, 302 F. Supp. 2d 654, 658 (E.D. La. 2004) (citing *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001)) ("Uncontroverted allegations . . . must be accepted as true.").

of CWL, Defendant Brett Price was its sole manager. (*Id.* at 2, 4, 7–8, ¶¶ 2, 7, 22.) He also owned and managed Defendant PWP, another Louisiana limited liability company ("LLC") engaged in the sale of wood products. (*Id.* at 4, ¶¶ 7, 9.) To date, Plaintiff and Defendant Brett Price "remain 50/50 members of [CWL]."[2] (*Id.* at 7, ¶ 21.) And Defendant Brett Price continues to own and manage Defendant PWP. (*See id.* at 2, 4, ¶¶ 2, 7.)

From 2021 through late-2023, CWL "successfully produced and sold custom wood products, including large cypress beams and molding, to customers throughout the United States." (*Id.* at 8, ¶ 24.) But when, in late-2023, CWL's "anticipated profits were not realized," Plaintiff undertook to investigate CWL's operations—and was allegedly obstructed by Defendants. (*Id.* at 8–9, ¶¶ 25–31.) Eventually, Plaintiff uncovered "specific acts of wrongdoing" by Defendants, including "self-dealing and usurpation of CWL's business opportunities." (*Id.* at 9–11, ¶¶ 31–33.) Here, the Court focuses on those allegations giving rise to Plaintiff's federal claims.

First, according to Plaintiff, CWL owns the "CYPRESS WOOD & LUMBER" trademark. (*Id.* at 11, ¶ 34.) This mark incorporates both a distinctive script and block letters, and it features "a drawing of a cypress tree above the word 'lumber.'" (*Id.* at 11, ¶ 35; *see also id.* at 12 (presenting an image of CWL's website, complete with the CYPRESS WOOD & LUMBER mark).) CWL "invested significant time, energy, and resources in[to] promoting and offering its CYPRESS WOOD & LUMBER-branded products," including at trade shows. (*Id.* at 12, ¶ 36.) As a result, CWL "developed substantial and valuable goodwill" in the mark. (*Id.* at 12, ¶ 37.) The mark is therefore "proprietary, highly valuable, and an important asset of CWL." (*Id.* at 12–13, ¶ 38.)

Plaintiff also alleges that CWL is and, at all relevant times, has been "the lawful registrant" of the domain name "cypresswood.net." (*Id.* at 13, ¶ 41.) Like the CYPRESS WOOD & LUMBER

---

[2] The Court notes, however, that CWL has not been operational since late-March 2025. (*See, e.g.*, Doc. 69 at 6 (citing Doc. 64 at 15); Doc. 76 at 1–2 & n.1 (acknowledging that CWL is not currently operational).)

mark, the domain name has been "continuously associated with CWL's brand and commercial identity." (*Id.* at 13–14, ¶ 42; *see also id.* at 23, ¶ 68 (explaining that the domain name has "been continuously used and owned by CWL").) Plaintiff apparently regards "cypresswood.net" as its own mark. (*See id.* at 23, ¶ 68 (discussing "marks" (plural)); *id.* at 26, ¶¶ 89, 91 (same).)

Second, in April 2025, "Defendant Brett Price knowingly and intentionally accessed a protected computer," (*id.* at 27, ¶ 96), and "caused the domain name . . . to be technically reconfigured so that Internet users entering 'cypresswood.net' into a web browser were automatically redirected to a website operated by [Defendant] PWP," (*id.* at 14–20, ¶¶ 45, 49–55). Plaintiff alleges that this redirection constitutes "intentional consumer confusion." (*Id.* at 20, 22, 24, ¶¶ 56, 62–63, 73.) Defendants are, in other words, "misappropriating consumer traffic from the legitimate owner" of the domain name (i.e., CWL), thereby "divert[ing] attention and goodwill from CWL's brand." (*Id.* at 22, ¶ 64.) Users "may mistakenly believe that PWP is affiliated with CWL," particularly since PWP sells products similar to those which CWL sold. (*Id.* at 22–23, ¶¶ 64–65; *see also id.* at 23, ¶ 67 ("Visitors may reasonably assume affiliation, sponsorship, or origin from CWL's brand, particularly given the similarity in product categories and [the] absence of disclaimers."); *id.* at 24, ¶ 75 (alleging use in interstate commerce and confusion).)

Plaintiff filed suit in this Court on August 29, 2025. (Doc. 1.) Then, on September 15, 2025, Plaintiff filed his *First Amended Verified Derivative Complaint* ("*Amended Complaint*") (Doc. 7), bringing six claims against Defendant Brett Price and, in some instances, Defendant Brandi Price and/or Defendant PWP. (Doc. 7 at 26–31, ¶¶ 87–121.) Two of these claims are federal. Count I of the *Amended Complaint* alleges infringement of CWL's unregistered marks and unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125(a).[3] (*Id.* at 26–27, ¶¶ 87–94.) Count

---

[3] In one instance—and one instance only—Plaintiff alleges that Defendants' use of the domain name "constitutes willful infringement under 15 U.S.C. § 1114." (Doc. 7 at 23, ¶ 71.) That section concerns *registered* trademarks. *See,*

II alleges violation of the Computer Fraud and Abuse Act ("CFAA"), specifically 18 U.S.C. § 1030(a)(2)(C), (a)(4), and (g). (*Id.* at 27–28, ¶¶ 95–99.) These claims are the basis for this Court's jurisdiction. (*Id.* at 5, ¶ 11 (citing 15 U.S.C. § 1121; 18 U.S.C. § 1030; 28 U.S.C. § 1331).)

In October 2025, Defendants filed the instant *MTD*, arguing that Plaintiff lacks Article III standing to bring the Lanham Act claim or the CFAA claim. (Doc. 26 at 1.) In support of their *MTD*, Defendants attached the Affidavit of CWL's former owner, David Williams, as well as a Bill of Sale dated June 17, 2020. (*See* Doc. 26-2 at 1–3.) The Bill of Sale purports to transfer ownership of "[CWL's] website, listed under the domains of Specialtylumber.net and/or Cypresswood.net, to Brett Price, for the sum of ten dollars ($10.00)." (*Id.* at 3.) In his Affidavit, Williams has sworn that the Bill of Sale is correct. (*Id.* at 1–2.) As part of their *Reply* (Doc. 40), Defendants have also attached screenshots of the website "GoDaddy.com," specifically its "WHOIS" domain lookup tool. (*See* Doc. 40-1 at 1–16.) These screenshots purportedly confirm that Defendant Brett Price is the registrant of the domain name "cypresswood.net." (*Id.* at 1–2.)

Separate from the above, in March 2026, this Court ordered Plaintiff's Counsel to file a supplemental brief addressing why the Court should not dismiss Plaintiff's CFAA claim *sua sponte* given that the arguments which Plaintiff previously advanced in support of that claim relied upon non-existent and/or bad law. (*See Order to Show Cause*, Doc. 69 at 3–5, 7 (citing *Plaintiff's Supplemental Brief in Support of Motion for Preliminary Injunction*, Doc. 59 at 18–19).) Plaintiff's Counsel timely filed *Plaintiff's Response to Order to Show Cause Regarding Count II (CFAA)* (Doc. 77), making clarificatory and, for the most part, entirely new arguments in support of the CFAA claim. (*Compare* Doc. 77 at 1–10, *with* Doc. 59 at 15–19.)

---

e.g., *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 616 (5th Cir. 2023) (discussing 15 U.S.C. § 1114, among other sections). The *Amended Complaint* does not, however, identify a registered mark. (*See* Doc. 7.) And Plaintiff's Lanham Act claim exclusively discusses 15 U.S.C. § 1125(a), which concerns *unregistered* marks. (*See id.* at 26–27, ¶¶ 87–94.) Thus, Plaintiff has not stated a claim under 15 U.S.C. § 1114, despite mention thereof.

## II.    RULE 12(B)(1) STANDARD

### A.    Generally

A party may raise the defense of lack of subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss. *See* Fed. R. Civ. P. 12(b)(1). "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)); *accord Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). But "[a] motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Miss.*, 143 F.3d at 1010; *accord Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss.*, 143 F.3d at 1010).

### B.    Facial vs. Factual Attacks

There are two types of Rule 12(b)(1) challenges to subject matter jurisdiction: "facial attacks" and "factual attacks." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings." *Harmouche v. Consulate Gen. of State of Qatar*, 313 F. Supp. 3d 815, 819 (S.D. Tex. 2018) (citing *Paterson*, 644 F.2d at 523). In considering a facial attack, the court "is required merely to look to the sufficiency of the allegations

in the complaint because they are presumed to be true." *Paterson*, 644 F.2d at 523. "If those jurisdictional allegations are sufficient the complaint stands." *Id.*

On the other hand, "[a] factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings—such as testimony and affidavits—may be considered." *Harmouche*, 313 F. Supp. 3d at 819 (citing *Paterson*, 644 F.2d at 523). The court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "[N]o presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Mortensen*, 549 F.2d at 891). Given a factual attack, the plaintiff, as the party seeking to invoke jurisdiction, must "submit facts through some evidentiary method and . . . prov[e] by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523.

"The district court consequently has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413; *accord Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (Dennis, J.). But "[w]here the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and [to] deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson*, 645 F.2d at 415; *see also CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008) (citation omitted) ("[A] district court must take care not to reach the merits of a case when deciding a Rule 12(b)(1)

6

motion."). The only exceptions are where the alleged federal hook "appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where [it] is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83 (1946); *accord Williamson*, 645 F.2d at 415.

### C.      Article III Standing

Dismissal for lack of Article III standing is properly granted under Rule 12(b)(1). *See, e.g.*, *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017) (citing *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011)). In order to establish Article III standing, a plaintiff "must show that [he or] she has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 195 (5th Cir. 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

"[S]tanding is not dispensed in gross." *Murthy*, 603 U.S. at 61 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). That is, the plaintiff "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Daves v. Dallas Cnty.*, 22 F.4th 522, 542 (5th Cir. 2022) (en banc) (quoting *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008)). "These requirements help ensure that the plaintiff has 'such a personal stake in the outcome of the controversy as to warrant [his or her] invocation of federal-court jurisdiction.'" *Murthy*, 603 U.S. at 57 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

On the other hand, "whether or not a particular cause of action authorizes an injured plaintiff to sue is a merits question, affecting statutory standing, not a jurisdictional question, affecting constitutional standing." *Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir. 2008); *accord Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 666 (5th Cir. 2020) ("Unlike Article III standing, statutory standing is not jurisdictional."). Dismissal for lack of statutory standing "is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty*, 634 F.3d at 795 n.2 (citing *Blanchard 1986*, 553 F.3d at 409).

## III.    PARTIES' ARGUMENTS

### A.    Defendants' *MTD* (Doc. 26)

Defendants acknowledge, if tacitly, that their Rule 12(b)(1) motion mounts a factual attack. (*See* Doc. 26-1 at 5–6.) They argue that, given the facts presented, Plaintiff lacks Article III standing to bring his Lanham Act claim or his CFAA claim. (*Id.* at 6–7, 12.) Accordingly, Defendants urge this Court to dismiss Counts I and II of the *Amended Complaint* and to decline to exercise supplemental jurisdiction over Plaintiff's various state law claims. (*Id.* at 1, 4, 12–13 (citing *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016) (per curiam)).)

As far as the Lanham Act claim, Defendants note that, under 15 U.S.C. § 1125(a), Plaintiff must prove that (1) CWL possesses a legally protectable mark, and (2) Defendants' use of that mark creates a substantial likelihood of confusion as to source, affiliation, or sponsorship. (*Id.* at 8 (citing *Molzan v. Bellagreen Holdings, L.L.C.*, 112 F.4th 323, 331–32 (5th Cir. 2024)).) Defendants contend that Plaintiff cannot establish the elements of Article III standing (i.e., injury-in-fact, traceability, redressability) because Defendant Brett Price, not CWL, owns the domain name "cypresswood.net." (*Id.* at 8–9 (citing Doc. 26-2 at 3).)

8

But Defendants also suggest that, in a case like this one, Article III standing may implicate the same question as statutory standing—namely, whether Plaintiff has a right to enforce the trademark under the Lanham Act. (*Id.* at 10 (citing *Fire Prot. Serv., Inc. v. Survitec Survival Prods., Inc.*, No. 19-2162, 2024 WL 2946098, at *3 (S.D. Tex. June 11, 2024)); *see also id.* (suggesting that CWL does not fall "within the zone of interests protected by" the Lanham Act, 15 U.S.C. § 1125(a), because CWL does not own the domain name (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014))); *id.* at 11 ("[Plaintiff's] lack of *statutory* standing . . . deprives this Court of jurisdiction." (emphasis added)).)

As far as the CFAA claim, Defendants argue that, because Defendant Brett Price personally owns the domain name "cypresswood.net," Plaintiff lacks Article III standing. (*See* Doc. 26-1 at 12.) Specifically, Plaintiff "does not have the legal authority to assert a claim arising out of the alleged unauthorized use or misuse of the domain [name]." (*Id.*) "Accordingly, the Court lacks jurisdiction to consider" Plaintiff's CFAA claim. (*Id.*)

### B.    Plaintiff's *Opposition* (Doc. 38)

Plaintiff responds that ownership of the domain name "cypresswood.net" is heavily disputed. (Doc. 38 at 1–2, 4.) Among other things, "[i]t is unclear" whether the relevant Bill of Sale conferred ownership of CWL's website or both the website and the domain name. (Doc. 38 at 4–5 (referencing Doc. 26-2 at 3).) "It is also unclear" whether Defendant Brett Price made the relevant purchase in his personal capacity or in his official capacity (i.e., as managing member of CWL). (*Id.* at 5 (citing Doc. 38-1 at 4).) Plaintiff argues that, "[i]f the Court [is] inclined to resolve th[is] factual dispute, CWL should first be allowed to conduct discovery regarding ownership of the domain name registration." (*Id.* at 2; *see also id.* at 7 (arguing that, "at this early stage," the Court should resolve the dispute over ownership in Plaintiff's favor).)

More to the point, Plaintiff contends that, where questions of fact "are central both to subject matter jurisdiction and [to] the . . . merits," the district court should "assume jurisdiction and proceed to the merits." (*Id.* at 7 (emphasis omitted) (quoting *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004)).) Accordingly, the Court should apply the Rule 12(b)(6) standard or the Rule 56 standard. (*Id.* at 7 (citing *Montez*, 392 F.3d at 150 (citing *Williamson*, 645 F.2d at 415)).) Whether CWL owned the domain name "prior to Defendants' rerouting activities" is, according to Plaintiff, "directly related to the merits of [Plaintiff's] CFAA claim." (*Id.* at 9.) Consequently, Defendants are effectively requesting that this Court prematurely "resolve a core factual dispute" under Rule 12(b)(1). (*Id.* at 8.) Doing so would "circumvent the procedural safeguards of Rules 12(b)(6) and 56." (*Id.*)

Lastly, Plaintiff asserts that his Lanham Act claim survives because it "arises out of CWL's ownership of the CYPRESS WOOD & LUMBER trademark, not from control of [the] domain name." (*Id.* at 10.) Plaintiff makes a similar argument regarding his CFAA claim, *viz.*, that ownership of the domain name does not ultimately affect whether Defendant Brett Price lacked or exceeded authorization to access CWL's computer system. (*See id.* at 11–12 (citations omitted).) Because Plaintiff's Lanham Act and CFAA claims remain viable, the Court should retain jurisdiction over Plaintiff's related state law claims. (*Id.* at 13.)

### C.    Defendants' *Reply* (Doc. 40)

Defendants emphasize that courts "have a continuing obligation to assure themselves of their own jurisdiction." (Doc. 40 at 3 (citing *Haverkamp v. Linthicum*, 152 F.4th 618, 624 (5th Cir. 2025)).) And they agree with Plaintiff that, where subject matter jurisdiction and the merits are intertwined, the court should assume jurisdiction and apply the Rule 12(b)(6) or Rule 56 standard. (*Id.* (citing *Montez*, 392 F.3d at 150).) Defendants reiterate that Plaintiff lacks Article III standing.

10

(*Id.* at 4.) In the alternative, Defendants argue that this Court should apply the Rule 56 standard in order to "resolve the issues (if any) that are dispositive of both subject matter [jurisdiction] and the merits." (*Id.* (citing *Montez*, 392 F.3d at 151).)

According to Defendants, the Bill of Sale proves that Defendant Brett Price purchased the domain name. (*Id.* at 5 (citing Doc. 26-2).) Likewise, the "WHOIS" domain lookup tool reflects that Defendant Brett Price registered the domain name. (*Id.* (citing Doc. 40-1 at 1–2).) Thus, Defendants say, Plaintiff cannot demonstrate that CWL has a legally protectable interest in the domain name. (*Id.* at 6–7.) Nor has Plaintiff alleged that Defendants have ever used the CYPRESS WOOD & LUMBER trademark. (*Id.* at 7.) Finally, Defendants contend that, as owner of the domain name, Defendant Brett Price "has the legal authority to control the content hosted" thereunder. (*Id.*) Thus, Plaintiff cannot state a viable CFAA claim. (*Id.* at 7–8.)

## IV.    DISCUSSION

The Court pretermits analysis of whether Plaintiff's Lanham Act and CFAA claims survive regardless of who owns the domain name "cypresswood.net" (and in what capacity). (*See* Doc. 38 at 10–12.) There is an antecedent procedural issue: Here, Defendants' challenges go to the merits of Plaintiff's Lanham Act and CFAA claims, such that dismissal of either claim under Rule 12(b)(1) would be improper. And even if the Court assumes jurisdiction and proceeds to the merits under Rule 56, the question of ownership is sufficiently open that dismissal on that basis would be premature.[4] Defendants' arguments are better addressed after additional discovery. Comfortably, then, the Court can deny Defendants' *MTD* without addressing whether ownership is salient.[5]

---

[4] Likewise—and perhaps needless to say—Defendants' challenges would fail under Rule 12(b)(6). *See, e.g.*, *Harold H. Huggins Realty*, 634 F.3d at 795–96 (5th Cir. 2011) (reciting the Rule 12(b)(6) standard).

[5] Of course, given the above, the fate of Plaintiff's state law claims is not yet ripe for decision. *Cf. Heggemeier*, 826 F.3d at 872 ("Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if it 'has dismissed all claims over which it has original jurisdiction.'").

11

**A.    Lanham Act Claim**

**1.  *Applicable Law***

a.  Subject Matter Jurisdiction & Merits

Worth repeating, "[w]here the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and [to] deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson*, 645 F.2d at 415. "The questions of subject matter jurisdiction and the merits will normally be considered intertwined where the statute provides both the basis of federal court subject matter jurisdiction and the cause of action." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 742 (5th Cir. 1986) (citing *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983)); *see also In re S. Recycling, L.L.C.*, 982 F.3d 374, 380 (5th Cir. 2020) ("[Courts] look . . . to the extent to which the jurisdictional question is intertwined with the merits, considering such factors as whether the statutory source of jurisdiction differs from the source of the federal claim and whether judicial economy favors early resolution of the jurisdictional issue."). "Jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional, and must satisfy the requirements specified in *Bell v. Hood* . . . ." *Sun Valley Gasoline*, 711 F.2d at 140; *see also Bell*, 327 U.S. at 682–83 (authorizing dismissal where the federal claim is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous").

b.  15 U.S.C. § 1125(a)(1)(A)

Count I of the *Amended Complaint* alleges infringement of unregistered trademarks, in violation of 15 U.S.C. § 1125(a). (Doc. 7 at 26–27, ¶¶ 87–94.) That section—"Section 43(a)" of the Lanham Act—provides in relevant part:

12

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

The Supreme Court has clarified that "not just *any* person can sue under Section 43(a)." *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 617 n.2 (5th Cir. 2023). A plaintiff must fall within the "zone of interests" protected by the statute and must show that the alleged violation of 15 U.S.C. § 1125(a) has proximately caused his injury. *Lexmark Int'l*, 572 U.S. at 129–33 (quotation omitted); *see also* 15 U.S.C. § 1127 (articulating the Lanham Act's purpose). Thus, in order to state a claim for trademark infringement under 15 U.S.C. § 1125(a), the plaintiff must allege (1) possession of a legally protectable trademark and (2) that the defendant's use of the trademark "creates a likelihood of confusion as to source, affiliation, or sponsorship." *Rex Real Est.*, 80 F.4th at 616 (quoting *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017)); *accord Molzan*, 112 F.4th at 331–32 & n.11.

### 2.  Analysis

Preliminarily, the Court notes that Fifth Circuit precedent strongly suggests that what Defendants style as a challenge to Article III standing is, in fact, strictly a challenge to the merits of Plaintiff's Lanham Act claim. In *Glen v. American Airlines, Inc.*, for example, the plaintiff ("Glen") brought a claim under the Helms-Burton Act, 22 U.S.C. § 6021 *et seq.*, "alleging that American [Airlines] had trafficked in confiscated property" belonging to Glen. 7 F.4th 331, 333–34 (5th Cir. 2021). The district court dismissed the case, holding in relevant part that Glen lacked

Article III standing "because he did not suffer a concrete injury." *Id.* at 334. On appeal, American Airlines ("American") argued, *inter alia*, that Glen "did not suffer an injury-in-fact because he lack[ed] a legally protected interest in" the confiscated property. *Id.* at 334–35.

The Fifth Circuit disagreed, holding that Glen had "suffered a concrete injury." *Id.* at 334. The court explained that American's argument that Glen lacked a legally protected interest "[went] to the merits of Glen's claim, not his [Article III] standing." *Id.* at 335. The distinction between the two "can sometimes 'cause conceptual trouble when a plaintiff alleges the deprivation of a dubious property . . . interest.'" *Id.* (quoting *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 736 (7th Cir. 2020)). "But when the existence of a protected property interest is an element of the claim, deciding whether the interest exists virtually always goes to the merits rather than [Article III] standing." *Id.* (quoting *Protect Our Parks*, 971 F.3d at 736). Because the Helms-Burton Act required "ownership of a claim to confiscated property"—and because Glen "allege[d] that he was harmed by American's trafficking in property *that belong[ed] to him*"—Glen had met "the minimum requirements of Article III." *Id.* at 334–35 (emphasis added) (citing *Webb v. City of Dallas*, 314 F.3d 787, 791 (5th Cir. 2002)). Glen's claim instead "fail[ed] on the merits" because he could not show that he had a legally protected interest in the confiscated property as defined by the Helms-Burton Act. *See id.* at 336–37.

More pointedly, in *Domain Protection, L.L.C. v. Sea Wasp, L.L.C.*, the plaintiff ("Domain Protection") sued under the Electronic Communications Privacy Act and the Texas Theft Liability Act to recover control of domain names which "had been at the center of an ownership controversy for years" prior and which the defendant ("Sea Wasp") had "locked" in order to prevent transfer, sale, or modification "pending resolution" of the controversy. 23 F.4th 529, 534–35 & n.2 (5th Cir. 2022). On appeal, Sea Wasp argued, *inter alia*, that "Domain Protection did not suffer an injury

sufficient to give it Article III standing." *Id.* at 535–36. Sea Wasp explained that Domain Protection "[wa]s not the rightful holder" of the domain names and therefore could not "claim [that] it was injured by something that happened to the domain names." *Id.* at 536.

The Fifth Circuit rejected this contention, observing that Sea Wasp was raising the issue of contractual standing, not Article III standing. *Id.* (citing, *inter alia*, *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) (per curiam)). "Contractual standing . . . goes to the merits of a claim." *Id.* (internal quotation marks omitted) (citing, *inter alia*, *Perry v. Thomas*, 482 U.S. 483, 492 (1987)). The Fifth Circuit looked "beyond the contract context," however, holding more broadly that "a dispute about ownership of an asset . . . does not deprive a federal court of jurisdiction." *Id.* (citing *Webb*, 314 F.3d at 791). The court reasoned by example:

> Imagine a diversity suit seeking to recover allegedly stolen jewelry. Not possessing the jewelry is the plaintiff's Article III injury. The defendant may defend the claim on the ground that the plaintiff never had a right to the jewelry. But that argument goes to the merits question of who owns the jewelry. *See* [*Webb*, 314 F.3d at 791]; *see also* [*Glen*, 7 F.4th 331] (explaining that challenge to plaintiff's ownership of property [which] he sought to recover "goes to the merits of [his] claim, not his standing"). If the law were otherwise, the entire lawsuit over the disputed jewelry would be resolved as a question of jurisdiction.

> Substitute domain names for jewelry and this case is no different. It is enough for Article III's injury-in-fact requirement that Domain Protection contended when filing suit that it did not possess domain names [which] it owned. Deciding who actually owns those names is a merits question. As a result, there is no jurisdictional problem with this lawsuit.

*Id.*; *see also id.* at 536 n.4 ("If Domain Protection . . . asserted no property interest in the domain names, *that* would be an Article III problem." (emphasis added)).

In order to state a claim for trademark infringement under 15 U.S.C. § 1125(a), a plaintiff must allege, *inter alia*, possession of a legally protectable trademark. *Rex Real Est.*, 80 F.4th at 616; *accord Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2010); *see also Lexmark Int'l*, 572 U.S. at 129–32 (explaining that a plaintiff must fall within the "zone

15

of interests" protected by 15 U.S.C. § 1125(a)); *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008) ("A mark need not be registered in order to obtain protection because '[o]wnership of trademarks is established by use, not by registration.'" (quoting *Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Tex., Austin*, 909 F.2d 839, 842 (5th Cir. 1990))). Whether that "protected property interest" exists is a merits question. *See Glen*, 7 F.4th at 333–34 (quoting *Protect Our Parks*, 971 F.3d at 736); *see also Domain Protection*, 23 F.4th at 536 & n.4 (citing *Webb*, 314 F.3d at 791) ("[A] dispute about ownership of an asset . . . does not deprive a federal court of jurisdiction.").

Indeed, the Fifth Circuit has more or less said so in the context of Lanham Act claims. In *Rex Real Estate I, L.P. v. Rex Real Estate Exchange, Inc.*, the defendant argued that the Fifth Circuit should affirm the district court's decision to grant judgment as a matter of law because the plaintiff had "failed to show that it own[ed] the [relevant] marks" and therefore could not establish infringement under 15 U.S.C. §§ 1114(1) and 1125(a). 80 F.4th at 616–17. The Fifth Circuit held that "[w]hether a plaintiff has a sufficient interest in a mark to sue under the Lanham Act is a question of *statutory* standing." *Id.* at 616 (emphasis added); *see Harold H. Huggins Realty*, 634 F.3d at 795 & n.2 (determining that the plaintiffs had Article III standing, even though statutory standing required a more thorough review); *see also Lexmark Int'l*, 572 U.S. at 125–28 & n.4.

The crux of Defendants' argument is that, because Defendant Brett Price personally owns the domain name "cypresswood.net," Plaintiff cannot "establish an invasion of CWL's legally protected interests or a cognizable injury." (Doc. 26-1 at 7–9, 11; *see also* Doc. 26-2 at 3.) This argument goes to the merits. *See, e.g.*, *Rex Real Est.*, 80 F.4th at 616–17; *see also Glen*, 7 F.4th at 335. Here, Plaintiff has alleged that CWL is and, at all relevant times, has been "the lawful registrant" of the domain name "cypresswood.net." (Doc. 7 at 13, ¶ 41; *see also id.* at 23, ¶ 68

16

(explaining that the domain name has "been continuously used and owned by CWL").) Plaintiff also apparently regards the domain name as a mark in which CWL has a legally protectable interest. (*See id.* at 23, 26, ¶¶ 68, 88–89.) And according to Plaintiff, CWL has been injured by Defendants' reconfiguration of the domain name. (*See, e.g.*, *id.* at 24, ¶¶ 75–76.) That injury is plausibly redressable by the relief sought. (*See id.* at 32–33.) Plaintiff has therefore established Article III standing, even if the question of statutory standing remains open. *See also Harold H. Huggins Realty*, 634 F.3d at 795 & n.2.

At a minimum, though, Defendants' challenge to Plaintiff's Article III standing "is also a challenge to the existence of [the] federal cause of action." *See Williamson*, 645 F.2d at 415. Put differently, even if Defendants are correct that their challenge implicates Article III standing, the Court must nevertheless conclude that, here, subject matter jurisdiction is bound up with the merits of Plaintiff's Lanham Act claim. *See, e.g.*, *id.*; *Clark*, 798 F.2d at 742 (citing *Sun Valley Gasoline*, 711 F.2d at 139). The Lanham Act provides both the basis for this Court's jurisdiction and the cause of action. *See* 15 U.S.C. §§ 1121(a), 1125(a); *see also Rex Real Est.*, 80 F.4th at 616–17 ("Section 43(a) creates a cause of action for infringement of unregistered marks."); *Frida Kahlo Corp. v. Tupperware Corp.*, No. 13-21039, 2014 WL 11880681, at *2 (S.D. Fla. Mar. 31, 2014) ("Federal courts have subject-matter jurisdiction over claims brought under the Lanham Act when a defendant uses a plaintiff's trademark in interstate commerce."); *Itamar Med., Ltd. v. Ectosense NV*, No. 20-60719, 2021 WL 12095119, at *4 (S.D. Fla. Dec. 29, 2021) (noting that the defendant's challenge to Article III standing "appear[ed] to be an attack on the merits of Plaintiff's trademark infringement claims, namely the purported falsity of Plaintiff's jurisdictional allegations relating to 'use in commerce' and Plaintiff's standing to bring the cause of action" (citation omitted)).

17

Defendants themselves acknowledge that their challenge to Plaintiff's Article III standing is, at the very least, intertwined with issues of statutory standing. (*See, e.g.*, Doc. 26-1 at 10 (positing that "it may be appropriate to evaluate the Lanham Act's statutory standing requirements (a separate inquiry) when analyzing Article III standing"); Doc. 40 at 4 (urging, in the alternative, application of Rule 56).)[6] And Defendants do not suggest that Plaintiff's Lanham Act claim is "immaterial and made solely for the purpose of obtaining jurisdiction" or that it is "wholly insubstantial and frivolous." *See Bell*, 327 U.S. at 682–83. Nor does the Court find that Plaintiff's Lanham Act claim satisfies either of these *Bell* criteria.

The outcome here does not change if the Court "assume[s] jurisdiction and proceed[s] to the merits." *See Montez*, 392 F.3d at 150. Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Again, the Court puts to the side the question of whether ownership of the domain name "cypresswood.net" is material. There is a more fundamental issue: Particularly given the limited record currently before the Court, Defendants have not shown that there is no genuine dispute over ownership of the domain name.

The Bill of Sale is a single sentence by which Williams purportedly sold CWL's "website, listed under the domains of Specialtylumber.net and/or Cypresswood.net, to Brett Price." (Doc.

---

[6] Defendants cite *Fire Protection Service, Inc. v. Survitec Survival Products, Inc.* (Doc. 26-1 at 10 (citing *Fire Prot. Serv.*, 2024 WL 2946098, at *3).) That case further reassures this Court that granting Defendants' Rule 12(b)(1) motion would be improper. There, the district court reasoned that "Article III standing and statutory standing . . . implicate[d] the same question," *viz.*, whether the plaintiff "ha[d] a right to enforce the trademarks under the Lanham Act." *Fire Prot. Serv.*, 2024 WL 2946098, at *3; *see also id.* ("Statutory standing requirements determine the answer."). The district court also noted: "Whether a plaintiff has a sufficient interest in a mark to sue under the Lanham Act is a question of *statutory* standing." *Id.* (emphasis added) (quoting *Rex Real Est.*, 80 F.4th at 616).

In *Fire Protection Service*, there was—in addition to the Rule 12(b)(1) motion—a pending motion for summary judgment. *Id.* at *1. Crucially, it is that second motion which the district court ultimately considered and granted with respect to the issue of statutory standing. *See id.* at *1, *6 ("Fire Protection's motion for summary judgment is granted as to prudential standing and is otherwise denied as moot." (internal citation omitted)). In other words, the district court tacitly assumed jurisdiction and proceeded to the merits, applying the Rule 56 standard. *See Williamson*, 645 F.2d at 415. Only after determining that the plaintiff lacked statutory standing did the court return to the question of subject matter jurisdiction. *See Fire Prot. Serv.*, 2024 WL 2946098, at *2–6.

26-2 at 3.) Williams's Affidavit merely authenticates the Bill of Sale. (*Id.* at 1–2.) Plaintiff raises manifold objections to Defendants' interpretation of the Bill of Sale, including: (1) "It is unclear" from the document whether Defendant Brett Price purchased CWL's website or the website *and* the domain name, and (2) "[i]t is also unclear from the document" whether Defendant Brett Price was acting in his personal capacity or in his official capacity (i.e., as CWL's managing member) when making the relevant purchase. (*See* Doc. 38 at 4–6.) The Court agrees that, for these reasons and others, the question of ownership remains sufficiently open that dismissal would be premature at this early stage. Defendants' argument is better addressed after additional discovery. *See, e.g.*, *Topsoe, Inc. v. Casale US, Inc.*, No. 24-33, 2025 WL 2523188, at *10 (S.D. Tex. Sept. 2, 2025) ("That is a merits argument best addressed at summary judgment . . . ."), *report and recommendation adopted*, 2025 WL 3284305 (S.D. Tex. Nov. 25, 2025); *Itamar*, 2021 WL 12095119, at *4 (noting that "discovery is still ongoing" and that conversion of the 12(b)(1) motion into a motion for summary judgment "would be premature at this stage"). The Court denies Defendants' *MTD* with respect to Plaintiff's Lanham Act claim.

### B.    CFAA Claim

#### 1.    *Applicable Law*

Count II of the *Amended Complaint* alleges violation of the CFAA, specifically 18 U.S.C. § 1030(a)(2)(C), (a)(4), and (g). (Doc. 7 at 27–28, ¶¶ 95–99.) Under 18 U.S.C. § 1030(g), "[a]ny person who suffers damage or loss by reason of a violation of [§ 1030] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." *See also id.* (explaining that such an action "may be brought only if the conduct involves" one of the factors enumerated in sub-clauses (I)–(V) of 18 U.S.C. § 1030(c)(4)(A)(i)). A person violates 18 U.S.C. § 1030 when he "intentionally accesses a computer without authorization or exceeds

authorized access, and thereby obtains . . . information from any protected computer." *Id.* § 1030(a)(2)(C). Likewise, a person violates § 1030 when he "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period." *Id.* § 1030(a)(4).

### 2. *Analysis*

The Court also denies Defendants' motion with respect to Plaintiff's CFAA claim. The reasons are substantially similar to the above: At a minimum, the Court's subject matter jurisdiction is so bound up with the merits of Plaintiff's CFAA claim that application of the Rule 12(b)(1) standard would be improper. *See also Surgical Assocs. of Houston, P.A. v. Rensel*, No. 23-4719, 2024 WL 4108781, at *1 n.3 (S.D. Tex. Sept. 6, 2024) (citing, *inter alia*, *Williamson*, 645 F.2d at 415); *Willis of Tex., Inc. v. Stevenson*, No. 9-404, 2009 WL 7809247, at *5 (S.D. Tex. May 26, 2009) ("Whether Plaintiff will ultimately succeed on the merits of its CFAA claim is beyond the Court's inquiry: 'legal insufficiency of a federal claim generally does not eliminate the subject matter jurisdiction of a federal court.'" (quoting *Honeywell Int'l, Inc. v. Phillips Petroleum Co.*, 415 F.3d 429, 433 (5th Cir. 2005))); *Beta Tech., Inc. v. Meyers*, No. 13-1282, 2013 WL 5602930, at *2 (S.D. Tex. Oct. 10, 2013) ("Given that Defendants' arguments go principally to the merits of Plaintiffs' CFAA claim, which does not appear to be immaterial or frivolous, the proper disposition of Defendants' motion to dismiss is under Rule 12(b)(6) rather than Rule 12(b)(1).").

The relevant CFAA section, 18 U.S.C. § 1030, "provides both the basis of federal court subject matter jurisdiction and the cause of action." *Thurmond v. Compaq Comput. Corp.*, 171 F. Supp. 2d 667, 670–72 & n.8 (E.D. Tex. 2001) (quoting *Clark*, 798 F.2d at 742); *see also* 18 U.S.C.

20

§ 1030(a), (g). "Therefore, the Court cannot dismiss Plaintiff['s] [CFAA] claim for lack of subject matter jurisdiction unless it finds that the claim is 'immaterial' or 'wholly insubstantial and frivolous.'" *See Thurmond*, 171 F. Supp. 2d at 672 (quoting *Bell*, 327 U.S. at 682–83); *see also Miller v. 4Internet, LLC*, 433 F. Supp. 3d 1188, 1192, 1195–96 & n.39 (D. Nev. 2020) ("The counterclaim defendants are correct that the jurisdictional question that they raise here . . . is a question that also goes to the merits of 4Internet's counterclaim[] under the CFAA . . . ."). Defendants have nowhere suggested that Plaintiff's CFAA claim satisfies either *Bell* criterion. (*See* Docs. 26-1, 40.) Nor does the Court deem dismissal under either criterion appropriate at this time. Thus, the Court "assume[s] jurisdiction and proceed[s] to the merits." *See Montez*, 392 F.3d at 150.

Again, Plaintiff alleges that CWL is and, at all relevant times, has been "the lawful registrant" of the domain name "cypresswood.net." (Doc. 7 at 13, ¶ 41.) And the Court agrees with Plaintiff that—in light of Plaintiff's objections, (*see* Doc. 38 at 4–6)—neither the Bill of Sale nor Williams's Affidavit (nor the "WHOIS" entry, to whatever extent it may be considered) places beyond genuine dispute the ownership of the domain name, (*see* Docs. 26-2, 40-1). Dismissal under Rule 56 would therefore be premature. Once again, Defendants' argument is better addressed after additional discovery. *See, e.g.*, *Topsoe*, 2025 WL 2523188, at *10; *Thurmond*, 171 F. Supp. 2d at 672, 684 (citing *Roberts v. Corrothers*, 812 F.2d 1173, 1178 (9th Cir. 1987)).

### 3. *Plaintiff's Response to Order to Show Cause*

Relatedly, after careful review of *Plaintiff's Response to Order to Show Cause Regarding Count II (CFAA)* (Doc. 77), the Court will not *sua sponte* dismiss Plaintiff's CFAA claim pursuant to the *Order to Show Cause* (Doc. 69). Of course, at this time, the Court takes no position on the

21

merits of the CFAA claim either.[7] Merely, the Court is satisfied that there is a basis for the claim other than the arguments advanced previously. (*See* Doc. 59 at 15–19.)

**V.    CONCLUSION**

Accordingly,

**IT IS ORDERED** that the *Rule 12(b)(1) Motion to Dismiss* (Doc. 26) filed by Defendants Brett Price, Brandi Price, and Price's Wood Products is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>July 23, 2026</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[7] And largely for that reason, the Court will not to discuss Plaintiff's clarificatory and/or new arguments here.