**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**BARRY BOYD, derivatively on behalf of Cypress Wood & Lumber LLC**

**VERSUS**

**BRETT PRICE, ET AL.**

**CIVIL ACTION**

**NO. 25-778-JWD-RLB**

# ORDER

Before the Court is Big Dawg Industries, LLC's ("BDI") Motion to Quash (R. Doc. 89). The Motion is opposed. (R. Doc. 90-2). BDI has filed a reply. (R. Doc. 101). Plaintiff Barry Boyd ("Plaintiff"), derivatively on behalf of Cypress Wood & Lumber, LLC ("CWL") filed a sur-reply. (R. Doc. 102).

## I. Background

Barry Boyd ("Plaintiff"), derivatively and on behalf of nominal defendant Cypress Wood & Lumber, LLC ("CWL") initiated this action by filing his Complaint against Brett Price, Price's Wood Products, LLC ("PWP"), and CWL, alleging trademark infringement, unfair trade practices ("LUTPA"), and violation of the computer fraud and abuse act, and requesting an injunction enjoining Price and PWP from using CWL's trademark and domain name in connection with lumber and wood products. (R. Doc. 1). Plaintiff filed an Amended Complaint on September 15, 2025, adding Brandi Price (collectively with Brett Price and PWP, "Defendants") as a defendant, re-asserting (1) trademark infringement against Brett Price and PWP, (2) violation of LUTPA by Brett Price and PWP, and (3) violation of the computer fraud and abuse act against Brett Price, and asserting new causes of action, including (1) breach of fiduciary duty, self-dealing, and usurpation of corporate opportunities against Brett Price and

Brandi Price, (2) unjust enrichment against Defendants, and (3) civil conspiracy against Defendants. (R. Doc. 7). The Amended Complaint's sole allegation regarding BDI states:

> Big Dawg Industries, LLC, a limited liability company organized and existing under the laws of the State of Louisiana and located in Point Coupee Parish, Louisiana. While a member and the manager of CWL, Brett Price also owned and operated Big Dawg Industries, LLC. Big Dawg Industries competes directly with CWL in the cypress lumber industry. Big Dawg Industries, LLC may have been the beneficiary of the assets and corporate opportunities misappropriated by defendants Brett Price and Brandi Price.

(R. Doc. 7 at 4-5).

The Parties entered into a Joint Protective Order on December 18, 2025. (R. Doc. 54). The Protective Order allows persons or entities that are not parties to this action, specifically including BDI, but who are required to produce documents in response to a subpoena to be entitled to invoke the provisions of the Protective Order. (R. Doc. 54 at 3).

On June 30, 2026, BDI filed a Motion to Quash a subpoena Plaintiff served upon it. (R. Doc. 89). The subpoena requested production of:

- a complete native electronic copy of BDI's QuickBooks backup file together with any associated passwords or files necessary to restore and review the data, for the period of January 1, 2019 through the present, including transaction history, audit trail information, audit log information, user activity, modifications, deletions, and other historical accounting records contained therein and
- a complete native electronic copy of any QuickBooks backup files created, maintained, or archived at any time from December 31, 2018 through the present.

(R. Doc. 90-3). BDI, as a non-party, argues that production of the QuickBooks data requested by the subpoena effectively requires BDI to divulge the complete inner workings of its business. BDI states the request is overly broad and vague, not relevant, and based on speculative allegations. (R. Doc. 89-1). BDI also requests an award of reasonable attorney's fees incurred in bringing this motion pursuant to Fed. R. Civ. P. 45(d)(1). (R. Doc. 89).

In response to BDI's Motion to Quash, Plaintiff filed an Opposition (R. Doc. 90-2).[1] Plaintiff argues any confidentiality concerns BDI may have are fully addressed by the Protective Order in this case, which BDI assisted in drafting, and the requested files are relevant to, at a minimum, Plaintiff's breach of fiduciary duty claim based on self-dealing and the usurpation of corporate opportunities. (R. Doc. 90-2 at 2). Plaintiff seeks information regarding whether Defendants improperly diverted CWL's assets or corporate opportunities to other entities Defendants controlled, such as BDI. (R. Doc. 90-2).

BDI argues in its Reply that it has agreed to provide the transactions between CWL and BDI from 2018 to present. (R. Doc. 101 at 1). Further, BDI is in the process of obtaining reports from QuickBooks stating expanded transaction descriptions and will provide them to Plaintiff when available. (R. Doc. 101 at 2). BDI argues Plaintiff's testimony regarding "severe accounting problems" with CWL and BDI is insufficient to justify the complete production of BDI's QuickBooks records and that Plaintiff's argument that complete production is required to assess the true number of transactions between CWL and BDI constitutes a request for "discovery on discovery" without evidence that BDI's production thus far has been deficient, that spoliation of evidence has occurred, or that BDI has participated in discovery misconduct. (R. Doc. 101). BDI asserts its transactions with other non-parties have no relevance to Plaintiff's claims. (R. Doc. 101).

Plaintiff's Sur-Reply argues BDI's agreement to supplement its production does not moot the subpoena because BDI's QuickBooks production is relevant to Plaintiff's allegations that Defendants diverted CWL's assets and corporate opportunities to affiliated entities they

[1] The Opposition was filed contemporaneously with a Motion for Leave to File Redacted Memorandum and Limited Exhibits Under Seal (Competitively Sensitive Financial Information) (R. Doc. 90), which was granted on August 21, 2026. (R. Doc. 103).

controlled. Plaintiff seeks the native QuickBooks data to see "the complete transaction-level detail, the audit-trail history, and any modifications or deletions necessary to determine how the intercompany transactions were recorded, altered, or recharacterized, and whether CWL's assets and corporate opportunities were diverted to entities the Prices controlled." (R. Doc. 102 at 3). Plaintiff states that quashing the subpoena would leave Plaintiff with no mechanism to enforce even the production BDI now admits it owes. (R. Doc. 102 at 3).

Plaintiff further argues BDI's QuickBooks records from 2019 through the present are necessary to establish the baseline against which Plaintiff can evaluate Defendants' conduct before and after their acquisition of CWL, allowing Plaintiff to compare pre- and post-acquisition accounting practices, determine whether the frequency or nature of intercompany transactions changed after the acquisition, identify whether customers, revenue streams, or corporate opportunities historically associated with CWL were later diverted to BDI, and evaluate whether challenged transfers represented ordinary course dealings or part of a scheme to misappropriate CWL's assets and business opportunities. (R. Doc. 102 at 4-5). Plaintiff asserts that native reports are required to properly assess this information rather than summaries of BDI's selected reports. (R. Doc. 102 at 4-5). Again, Plaintiff reiterates that documents produced by BDI are subject to the Protective Order in this matter. (R. Doc. 102 at 7).

## II. Law & Analysis

### A. Legal Standards

A subpoena may command a non-party to produce designated documents, electronically stored information, or tangible things in his possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). Under Fed. R. Civ. P. 45, a party issuing a subpoena to a non-party "must take reasonable steps to avoid imposing undue burden or expense[.]" Fed. R. Civ. P. 45(d)(1). "The

court for the district where compliance is required must enforce this duty and impose an appropriate sanction–which may include lost earnings and reasonable attorney's fees–on a party or attorney who fails to comply."[2] *Id*.

A court must quash or modify a subpoena if it: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in [Fed. R. Civ. P.] 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d). On timely motion, the court may quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i).

"It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure. Likewise, if the trade secrets are deemed relevant and necessary, the appropriate safeguards that should attend their disclosure by means of a protective order are also a matter within the trial court's discretion." *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 802 (S.D. Tex. 2010), qu*oting R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 269 (6th Cir.2010) (*quoting Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 326 (10th Cir.1981)).

To determine whether a person is being subjected to undue burden, courts weigh "(1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered[ ]; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch*

[2] BDI requests an award of reasonable attorney's fees but fails to make any arguments regarding its entitlement to these fees. The Court does not find that sanctions are appropriate and will not award reasonable attorney's fees to BDI.

*Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). The moving party has the burden of demonstrating that compliance with the subpoena would be unduly burdensome. *Id*. Courts "consider the expense and inconvenience to [a] non-party." *Id* (citations omitted).

Subpoenas issued for discovery purposes, such as those at issue here, are also subject to the discovery limitations outlined in Rule 26(b). *See Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 596 (E.D.Tex.2003); 9A Wright & Miller, Federal Practice & Procedure 2d § 2459 ("Of course, the matter sought by the party issuing the subpoena must be reasonably calculated to lead to admissible evidence as is required by the last sentence of Rule 26(b)(1)."). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Information is relevant if it "bears on, or ... reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party." *Coughlin v. Lee*, 946 F. 2d 1152, 1159 (5th Cir. 1991) (citation omitted).

**B. Analysis**

Pursuant to Fed. R. Civ. P. 45, the Court may quash a subpoena that requires disclosure of trade secrets or other confidential information. Fed R. Civ. P. 45(d)(3)(B)(i). Plaintiff is requesting BDI's QuickBooks backup files from January 1, 2019 through the present to review BDI's transaction history, audit trail information, audit log information, user activity, modifications, deletions, and other historical accounting records contained therein and BDI's QuickBooks backup files created, maintained, or archived at any time from December 31, 2018 through the present. (R. Doc. 90-3). The Court agrees with BDI that this information constitutes confidential information as it includes the detailed commercial activity, business dealings, and contractual relationships of BDI. *See Rimkus Consulting Group, Inc. v. Cammarata*, 255 FRD

417, 441 (S.D. Tex. 2008) ("Customer lists, pricing information, client information, customer preferences, buyer contracts, and marketing strategies have all been recognized as trade secrets."); *Alorica Inc. v. Tech Mahindra (Americas) Inc.*, No. 4:24-CV-30, 2025 WL 2301881, at *5 (E.D. Tex. Aug. 8, 2025) (seeking a party's confidential financial information provides a party standing to quash a subpoena directed to a non-party).

Plaintiff and BDI participate in the same industry, and providing this information to Plaintiff would give Plaintiff unfettered access to the innerworkings of his competitor's business. The Court does not find Plaintiff's argument that the confidentiality issue is wholly solved by the Protective Order persuasive. BDI has stated that since BDI and Plaintiff are engaged in business within the same industry, revealing this confidential information to Plaintiff would be particularly harmful to BDI as it discloses BDI's profit margins, pricing structures, vendor relationships, customer information, and other proprietary business information. (R. Doc. 89-1). Further, the information being subject to a protective order does not necessarily mean Plaintiff is entitled to the information; the information must still be within the scope of discovery. *See* Fed. R. Civ. P. 26 ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *Marks v. Shaw Constructors*, No. 00–3202, 2001 WL 1132028, at *1 (E.D.La. Sept. 24, 2001) (Plaintiff is not entitled to discovery that merely "might lead to relevant and admissible evidence.").

The Court has discretion to grant a motion to quash when a subpoena to a non-party requests trade secrets or confidential information, depending on whether the information is deemed "relevant and necessary" to Plaintiff's claim. *M-I LLC*, 733 F. Supp. 2d at 802. Considering the *Wiwa* factors, the Court finds that the information sought in the subpoena is neither relevant nor necessary.

First, Plaintiff's allegations in the First Amended Complaint state that the Prices have misappropriated assets and corporate opportunities to PWP. The sole allegation in the First Amended Complaint against or even referencing BDI is that BDI "may have been" the beneficiary of misappropriated assets by the Prices as the Prices own BDI. (R. Doc. 7 at 4-5). In his Opposition, Plaintiff states that discovery has produced proof of many intercompany transactions between BDI and CWL. Plaintiff points to a hand-drawn diagram made by Brett Price depicting the movement of funds between CWL and BDI and Plaintiff's own testimony that there were "severe accounting problems" among the entities. (R. Doc. 90-2 at 8). The Court does not find Plaintiff's speculative allegation and minimal proof sufficient to render all of BDI's financial records in QuickBooks relevant.

Second, since Plaintiff has made no allegations against BDI, the Court does not think Plaintiff has a high need for the documents. Plaintiff argues the information is necessary for its breach of fiduciary duty claim, but Plaintiff's First Amended Complaint states that the Prices breached their fiduciary duty by making payments to entities Brett Price controls. (R. Doc. 7 at 29). BDI has already produced, or agreed to produce, the complete transaction history between BDI and CWL from 2018 through the present, which provides the information required for this allegation. Further information regarding BDI's transactions with third parties is not necessary to prove Plaintiff's claims.

Third, Plaintiffs have requested a wide breadth of information, and fourth, the time period covered is overbroad. Plaintiff argues that complete review of BDI's QuickBooks records from December 31, 2018 to the present is necessary to determine whether assets or business opportunities were misappropriated from CWL to BDI, but the Court does not find this rationale

compelling given the extent of the confidential information sought.[3] Plaintiff seeks information regarding all of BDI's transactions, but only the transactions between BDI and CWL, which were or will be provided, are necessary for BDI's claim. Further, Plaintiff states that December 31, 2018 is "about a year prior to the parties' acquisition of CWL" and requests information from 2019 to create a "baseline" upon which to compare BDI's pre- and post- acquisition activities. (R. Doc. 90-2). Since any misappropriation could not have occurred prior to the parties' acquisition of CWL, the Court does not find any information prior to the parties' acquisition relevant.

Fifth, Plaintiff requests "a complete native electronic copy of BDI's QuickBooks backup file," "including transaction history, audit trail information, audit log information, user activity, modifications, deletions, and other historical accounting records contained therein" "created, maintained, or archived at any time from December 31, 2018 through the present." (R. Doc. 90-3). This amounts to all of BDI's QuickBooks records; the documents requested are not particular nor specialized, and Plaintiff has not given a sufficient reason to necessitate complete disclosure of BDI's financial records. Sixth, even if the burden of getting the information is not particularly high since the information can be retrieved online, the large amount of detailed information that Plaintiff seeks is not relevant nor necessary, and the Court will not require BDI to produce the requested information.[4]

---

[3] Plaintiff urges the Court to rely upon *Occidental Chem. Corp. v. Louisiana Pub. Serv. Comm'n*, 06-894-JJB-DLD, 2008 WL 566833, at *2 (M.D. La. Feb. 29, 2008). The Court in *Occidental* evaluated the contested, restrictive terms in a proposed protective order involving the access to confidentially designated information in discovery. The instant case is distinguishable from this non-binding decision.

[4] After the filing of this Motion to Quash by BDI, BDI has since sought to intervene in the instant lawsuit (R. Doc. 96). This Order has no dispositive effect on discovery to and from BDI if BDI becomes a party to the litigation subject to its request to intervene.

## III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Big Dawg Industries, LLC's Motion to Quash (R. Doc. 89) is **GRANTED**.

**IT IS FURTHER ORDERED** that each party is to bear its own costs.

Signed in Baton Rouge, Louisiana, on August 25, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**